IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLA GLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 2030 |
| | ) | |
| KENWOOD HEALTHCARE CENTER, INC. | ) | Judge Kendall |
| | ) | |
| Defendant. | ) | Magistrate Judge Keys |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT II

Defendant, KENWOOD HEALTHCARE CENTER, INC., by its attorneys Ashman & Stein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as and for its Reply Memorandum in Support of its Motion to Dismiss Count II of Plaintiff's Complaint, states as follows:

### I.  Plaintiff Was Represented By Counsel And Could Have Amended Her Charge

Plaintiff's IDHR charge of discrimination against Defendant was litigated for over two years under theories of age-based discrimination and  harassment and physical handicap, a herniated disc. See Ex. 1, Plaintiff's Response to Motion to Dismiss . Plaintiff initially filed this charge on October 12, 2005 with the Illinois Department of Human Rights *pro se.* Defendant also initially proceeded *pro se.*  Shortly before the IDHR conducted a Fact Finding Conference, both parties retained counsel. Plaintiff engaged Dennis Kellogg of the Chicago firm of Sheats & Kellogg, who filed his appearance in the IDHR on October 18, 2006 – the same day that counsel for Defendant/Respondent appeared.  See Defendant's

Exhibit #1 hereto. Plaintiff continued to be represented by counsel throughout the pendency of the IDHR and subsequent Human Rights Commission proceedings.

The IDHR investigator assigned to the matter secured necessary and appropriate information from counsel for each party herein. The IDHR formulated an investigation report and issued a Notice of Substantial Evidence and Notice of Dismissal. See Defendant's Group Exhibit 2. This report references that on September 1, 2005, Ella Glover, a nursing assistant at Kenwood Healthcare Center, a nursing facility, had been requested by a Kenwood floor nurse to clean and re-diaper a resident who had soiled herself with a bowel movement and was incapable of cleaning herself. Ms. Glover refused, stating that she was going to lunch. Kenwood's policies; the dictates of health and safety regulations; and common decency each required that Ms. Glover accept such direction and perform her assigned task.  In fact, Ms. Glover **did proceed to lunch**, **allowing the resident to sit in her own feces for the duration**.  After Kenwood's management investigated the matter, Ms. Glover's employment was terminated on the grounds of insubordination and patient abuse. Accordingly, the Illinois Department of Human Rights found that Respondent did not discriminate against Plaintiff because of her age or physical handicap, and that Respondent had reason to be believe that Glover engaged in the behavior for which she was terminated. See Defendant's Group Exhibit 2, pp.5-8)**.**

The matter subsequently proceeded in the Illinois Human Rights Commission, by Complaint filed on March 28, 2007.  Again,   Plaintiff continued to be represented by

counsel. Attorney Kellogg subsequently withdrew his representation of Plaintiff on February 5, 2008, and Plaintiff's present counsel was granted leave to file an Appearance on behalf of Plaintiff on February 28, 2008. See Defendant's Exhibit 3. Plaintiff requested and obtained a Right to Sue Letter on March 7, 2008. This action followed.

Plaintiff could have amended her Charge to include retaliation at any time throughout the two and one-half years prior to suit. The Administrative Code of the Illinois Department of Human Rights explicitly states that:

Section 2520.360 Amendment

a)    A charge may be amended to cure technical defects or to set forth additional facts or allegations related to the subject matter of the original charge, and such amendments shall relate back to the  original filing date.

b)    A charge may be amended to include new harms or bases which occurred within 180 days of the amendment or for charges under Article 3 of the Act, one year of the date of the amendment.

Title 56, Chapter II, Part 2520, Section 2520.360, Defendant's Exhibit 4 herein.

Plaintiff could have amended her Charge to reflect a claim of retaliation, or indeed any other matter that she thought should appear therein. Plaintiff could have set forth any additional facts, or any additional allegations related to the subject matter of the original charge, and by law such amendments would relate back to the initial filing date. *Id.* As shown, Plaintiff also could have amended her Charge to include any new claims, allegations ("new harms or bases").    During the preceding two and one-half years, Plaintiff, by herself or through counsel, could have appropriately amended her Charge, but failed to do so. Nor

3

was there any motion, or any other effort, to do so, nor does Plaintiff now offer any reason

or circumstances that prevented Plaintiff or her counsel from doing so.  Plaintiff instead

argues that the law should be changed for Plaintiff because she was *pro se.* This argument,

and its basis, are simply and obviously untrue.

### II. Plaintiff Is Barred From Bringing A Title VII Claim Under A Retaliation Theory When Retaliation Was Not Contained As A Basis For Liability In The EEOC Charge

Plaintiff did not charge the Defendant with retaliation in the IDHR, nor was retaliation

in any way, shape or form brought to the Defendant's attention during the two and one half

year pendency of this matter before the IDHR and Human Rights Commission. As a general

rule, a Title VII plaintiff cannot bring claims in a lawsuit that are not included in the IDHR

Charge. Allowing a complaint to encompass allegations outside the ambit of the predicate

EEOC charge frustrates the EEOC's investigatory and conciliatory role, as well as deprive

the charged party of notice of the charge. *Dillon v. M.S. Carriers, Inc.*, 2000 WL 1141569,

p. 7 (N.D. Ill.), *relying* on *Vela v. Village of Sauk Village*, 218 F. 3d 661, 664 (7th Cir., 2000),

quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Here, Plaintiff attempts to circumvent the rule by asserting that the EEOC

Complainant Information Sheet ("Questionnaire"), signed by the Plaintiff, "refers" to

retaliation. See Exhibit 2 of Plaintiff's Response to Defendant's Motion to Dismiss.  Because

the plaintiff does not specifically refer, or even describe retaliation in the Questionnaire, and

more importantly, because there is not a reasonable relationship between the retaliation

alleged in the instant Complaint and the charges investigated by the IDHR, Plaintiff's efforts to plead retaliation now must fail.

In *Matthews v. Columbia College Chicago*, 435 F. Supp. 805, 813 ( N.D. Ill., 2006), Judge Bucklo had the opportunity to consider a very similar situation. In *Matthews*, the plaintiff's EEOC Charge alleged that defendant/respondent retaliated against her in a variety of ways as a result of her filing a previous EEOC charge. But plaintiff's complaint alleged that defendant retaliated by failing to investigate her internal claim against those whom she believed were retaliating against her. The Court held that these complaints were **not** within the scope of the EEOC charge. Matthews argued that she did raise the issue of defendant's failure to investigate her internal claim against defendant with the EEOC in two distinct letters. Judge Bucklo acknowledged that those two letters raised the issue of disparate treatment, and that under some circumstances the court may consider other written evidence in addition to the allegations contained within a charge. However, the Court ruled:

> Matthews signed the original charge, which did not include the additional type of retaliation she now alleges she suffered. Although she clearly intended the EEOC to investigate this additional charge, she did not file a separate charge with the EEOC, or ask the EEOC to amend the charge to add this new allegation. Because there is no reasonable relationship between this type of retaliation and the retaliation alleged in her charge, and because it is not reasonable that this type of claim would grow out of the EEOC investigation of the allegations in her charge, I cannot consider it here. *Id*.

Of particular relevance here, the Court also noted:

> Matthews argues it is unfair to expect that she, as a *pro se* plaintiff who was not represented by counsel at the time she brought

5

her EEOC charge, would understand how to make her charge in a way that would allow her to bring her current retaliation claims. While I sympathize with Ms. Matthews' current situation, **the need for the employer to have notice is clear**, and it is Ms. Matthews' responsibility, as the complainant, to make sure that the charges that she signed reflected all the discrimination she suffered. *See Novitsky*, 196 F. 3d at 702-03 ("[W]hether or not the complainant had a lawyer, whether or not she sought or listened to counsel, indeed whether or not she read or understood the charge, it was *her* charge, and it did not put her former employer on notice...."). (Emphasis added; in *Novitsky*, emphasis in original). *Id.*

In *Novitsky v. American Consulting Engineers*, 196 F. 3d 699 (7th Cir. 1999), *supra*, the plaintiff filed an EEOC charge against her employer, alleging age and religious discrimination. She obtained her right to sue letter from the EEOC, but the District Court granted summary judgment in favor of the employer because the employer had a legitimate business reason to discharge the plaintiff after losing a major contract to a rival firm.  Ms. Novitsky also claimed that her employer failed to accommodate her religious belief by not allowing her take a day off of work in observance of Yom Kippur, the most sacred of Jewish Holy days.  The District Court dismissed this claim as well since the failure to accommodate was not included in the EEOC charge. On appeal, the only issue was whether the dismissal for failure to accommodate was appropriate. *Id.* at 700.

Judge Easterbrook observed that the initial charge was on the basis of age and religion (allowing other employees to make anti-Semitic remarks in the workplace).  The charge did not mention Yom Kippur or any mention of a failure to accommodate her religious practices. Plaintiff, relying on *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc*.,  538 F. 2d 164 (7th Cir. 1976) (en banc), argued that the claims were reasonably related to the allegations

of the charge and growing out of such allegations. Judge Easterbrook noted that a charge of discrimination enables the EEOC to investigate the allegations and negotiate with the employer. Congress hoped that negotiation would avoid the need for litigation. Thus, courts stress that the essential question is what the EEOC investigation could reasonably be expected to grow from the original complaint. Judge Easterbrook rejected the plaintiff's argument and reasoned that a charge alleging discriminatory discharge and anti-Semitic remarks would **not** naturally lead to an investigation of an employer's handling of requests to take time off for a religious observance. More importantly, by not raising the accommodation claim, the EEOC was unable to attempt to conciliate the dispute. By making a wrongful discharge claim, and withholding a claim about one day's work, the plaintiff in *Novitsky* frustrated the conciliation process. *Id.* at 702.

As Plaintiff seeks to do here, the plaintiff in *Novitsky* attempted to avoid the limitations of the charge by blaming the EEOC. Ms. Nowitsky's questionnaire mentioned the Yom Kippur episode, but the charge itself drafted by an EEOC staffer did not. Judge Easterbrook rejected the plaintiff's argument and ruled that:

> Under the statute, however, **it is the charge rather than the questionnaire that matters**. 42 U.S.C. Section 2000e-5(b). See *Perkins v. Silverstein*, 939 F. 2d 463, 470 (7th Cir. 1991). **Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation**. What is more, the charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves. Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it - - as Novitsky did. If she had been dissatisfied with the staff's understanding of her answers,

all she had to do was point this out and ask for an addition. (Emphasis added).  *Id.*

The courts recognized in both *Matthews* and *Novitsky* that the claimant is  typically limited in her subsequent lawsuit to the matters charged and litigated in the underlying EEOC proceedings. Contrary to the Plaintiff's assertions here, notice to the defendant of the newly brought claim is a critical factor which courts in the Seventh Circuit and Northern District of Illinois consider. Defendant had no notice of the claimed retaliation until this Complaint was filed.  Since the Plaintiff Glover was terminated prior to her filing her claim with the EEOC, there is no simply no excuse for Plaintiff not pleading retaliation in her EEOC filing, or having her counsel amend the EEOC charge to include the allegation. Since the claim of retaliation could have been, and should have been, included in her administrative charges, it cannot now serve as the basis of a retaliation claim in her complaint. See *McKenzie v. Illinois Department of Transportation*, 92 F. 3d 473, 483 (7th Cir., 1996); see also *Steffen vs Meridian Life Ins. Co.*, 859 F. 2d 534, 545 (7th. Cir, Ind., 1988)

### III.  The Plaintiff's Underlying Age Discrimination Claim And Disability Claim Are Not Reasonably Related To The Newly Filed Claim For Retaliation

The general rule is that a plaintiff may not bring claims under Title VII that were not included in the charge filed with the EEOC.  This rule serves two purposes: affording the EEOC the opportunity to settle the dispute between the employee and the employer, and putting the employer on notice of the charges against it.  *Sitar v. Indiana Department of Transportation*, 344 F.3d 720, 726 (7th Cir., Ind., 2003), relying on *Vela v. Village of Sauk*

*Village*, 218 F.3d 661, 664 (7th Cir., 2000). The only qualification to this principle applies to claims that are "like or reasonably related" to the EEOC charge, and can be reasonably expected to grow out of the EEOC investigation of the charges. Id., *relying on Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F. 2d 164, 167 (7th Cir., 1976) (*en banc*). Normally, retaliation and discrimination claims are not "like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another. *Heard v. United States Steel*, 2006 WL 3775942, p.3 (S.D. Ill., 2006), relying on *Sitar v. Indiana Department of Transportation*, 344 F. 3d. 720, 726, (7[th]. Cir., 2003).

However, Plaintiff, relying on *Sickenger v. Mega Systems*, 951 F. Supp. 153 (N.D. Ind. 1996), - - decided prior to *Matthews* and *Novitsky*, *supra* - - attempts to fall under this exception by asking this Court to consider the EEOC Questionnaire which makes a vague reference to retaliation.  Pursuant to *Matthews* and *Novitsky*, *supra,* Plaintiff's reliance on the Questionnaire is unavailing.  Moreover, examination of the Questionnaire and the Charge actually filed makes clear that a claim of retaliation is not reasonably related to the charges of age discrimination and discrimination due to disability, nor can it reasonably be expected to grow out of the EEOC investigation of these charges. Paragraph 12 of the Questionnaire (Exhibit 2 of plaintiff's response to motion to dismiss), provides that:

> 12.    If you wrote retaliation in your answer to number 8 above, state how you opposed unlawful discrimination (i.e., testified at a discrimination hearing, filed a prior discrimination claim, or complained about unlawful discrimination). Include dates, charge numbers, and/or the name or title of the person to whom you complained.

(Response)
Spoke to supervisor: Dolores Randell regarding personal attacks by
Barbara Bolden.  3rd wk of August. I was confronted by Ms. Bolden
stating "so you told on me...yall old folks should just quit". Mrs.
Pullman (social worker)stated to Barbara to learn how to address your
staff.

**There is no reference to retaliation in Plaintiff's answer to number 8**.  Plaintiff instead

responded as follows:

8a.    Issue (harm)   Discharge
       Basis (type of discrimination) Discharge/Age discrimination

       Explain why you feel you were discriminated against because of
       the basis identified above.  How were others in your situation
       treated?  Include names and job titles.

(Response)
       As of 9/29/05 I would have been employed with this company for 13 years.
       Daily I was harassed by Barbara Bolden stating "I was old &
       should just quit.  I was also given the hardest tasks to complete.  In 13 years
       I have never had any disciplinary actions or attendance issues.

8b.    Issue (harm):  Harassment/Physical
       Basis (type of discrimination):     Age discrimination

       Explain why you feel you were discriminated against because of
       the basis identified above.  How were others in your situation
       treated?  Include names and job titles.

       Barbara repeatedly stated "I should quit because I was too old". In 2003 I
       lifted a heavy patient which caused me to have a slipped disc in my back.

The only claims in the Charge are those due to age and physical handicap. Under each

claim, Plaintiff notes that she was discharged by Debbie Missal, Director of Nursing - - not

Barbara Bolden - - on September 7, 2005 for alleged patient neglect which occurred on

September 1, 2005.

Since the Plaintiff Glover has invited this Court to consider matters outside of the pleadings for this Court's consideration, she is implicitly inviting this Court to decide this issue as a motion for partial summary judgment. *Alicia v City of Chicago*, (2002 U.S. Dist. LEXIS 9128, p3), relying on *Sickenger v. Mega Sys. Inc.*, 951 F. Supp 153, 156 (N.Dist. Ind. 1996). To the extent that the Court complies with this request, and in  the interest of completion, Defendant respectfully requests that this Court consider the Investigative Report filed during the pendency of the underlying litigation. The entire investigation report is attached hereto as Exhibit 2.  Page 6 of said report describes that Plaintiff Glover, a certified nurse's aide, neglected a resident by refusing to change a soiled resident until she had her hour lunch. The Plaintiff Glover was terminated for neglect of duty, inconsiderate treatment of a resident, and insubordination. Page 8 of this Report confirms that Plaintiff Glover conceded that she was aware one of her patients was soiled prior to going on lunch break.

Someone circled the word "retaliation" in the Questionnaire.  It does not, of course, follow that retaliation took place or was even alleged, much less described. In fact, Plaintiff describes that Barbara Bolden, on a daily basis, allegedly harassed her because she was old, and gave her the most difficult assignments. Plaintiff referenced the conversation she purportedly had with Barbara Bolden, wherein Barbara Bolden confronted her in the third week of August and allegedly said "so you told on me...yall old folks should just quit". Significantly, Plaintiff does not assert, either in the Questionnaire or in an oral statement to the IDHR, that following this conversation with Barbara Bolden that there was any change in this alleged age-based harassment, or that the harassment became worse, or, most

11

importantly, that she was terminated as a result of reporting the alleged acts of age discrimination. All we know from reviewing the Questionnaire and the Charge is that the Plaintiff was terminated on September 7, 2005 by Debbie Missal, not Barbara Bolden - - obviously a different person, at a time different than the third week of August. Even if the Charge is held to support an allegation of age-based harassment in the subsequent complaint, there is no connection between the alleged acts by one individual in the third week of August based on non-retaliatory matters, and another individual, three weeks later, regarding a claimed retaliatory act.

In *Heard vs. United States Steel*, 2006 WL 3775942, p3 (U.S.D.C,.S.Dist. Ill.,) relying on *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001), the Court noted that while a subsequent complaint does not have to be a replica of the EEOC charge, it must at a minimum describe the same conduct and implicate the same individuals. In *Heard*, the plaintiff's EEOC charge alleged discrimination on the base of race, gender, and disability. Her subsequent complaint, in part, sounded in retaliation. In dismissing the complaint for failure to exhaust her administrative remedies with respect to the retaliation claim, the Court held that plaintiff's failure to use the word "retaliation" in her narrative; her failure to allege that the harassment got worse after she complained; and her failure to allege that she was harassed and terminated because she complained, means that she may not make a retaliation claim here. *Id.*, at p.4, relying on *Auston vs. Schubnell*, 116 F. 3d 251, 254 (7th Cir. 1999).The same result, for the same reasoning, should apply here.

Plaintiff cites a number of cases which are readily distinguishable. In *Sickinger v.*

*Mega Systems, Inc.*, 951 F. Supp. 153, 158 (N.D., Ind., 1996), not only did the plaintiff clearly articulate that she wanted the EEOC to investigate the claim of retaliation  in her questionnaire, but the EEOC official mistakenly advised her that she did not have to have retaliation included in her charge. Both key aspects are missing here. Similarly, in *Jackson vs. International Brothers of Teamsters*, 2002 U.S. Dist LEXIS 4908, the plaintiff was assured by EEOC officials that his claim of negative racial environment, quite clearly documented in his intake questionnaire, would be investigated, and court allowed the subsequent complaint for racial harassment to stand even though it was not contained in the EEOC charge. There is no such documentation here; there is an absence thereof.

In *Alicea vs City of Chicago*, 2002 U.S. Dist. LEXIS 9128 (N.D. Ill. 2002) the same conduct, ethnic slurs, in an EEOC charge of discrimination for "national origin" would support a subsequent complaint under racial discrimination since the two claims are alike and reasonably related. In our case, the alleged age-based discrimination does not form a basis for retaliatory conduct, just a basis for age-based discrimination.  Similarly, in *Beach v. DeKalb Clinic*, 2002 U.S. Dist. LEXIS 6527, the Court found evidence that the Plaintiff had *actually intended* the EEOC to investigate charges of sexual harassment, though not contained in the underlying EEOC charge, which did include sexual discrimination allegations. That evidence is missing here. In *Caratachea v Homewood Industries*, 2002 U.S. Dist LEXIS 18797, the plaintiff was permitted to bring a retaliation complaint even though it was not specifically pled in the Charge, since she did allege that she was terminated as a result of *her reporting* discrimination.  In our case, there is no allegation that the

13

discriminatory conduct worsened after the conduct was reported, so there is no evidence of retaliation.  Similarly, in *Horwitz v. Sterling Healthcare*, 1998 U.S. Dist. 7184, an ADA claim was allowed in the subsequently filed complaint, though not initially included in the EEOC charge, because the allegation of discrimination due to pregnancy was contained in the initial EEOC charge. In *Horwitz*, the same conduct by the employer, discrimination due to pregnancy, would not only lead to a discrimination claim based on sex, but also a claim under the ADA. In our case, since the allegedly age-based discriminatory conduct did not worsen, the subsequent claim of retaliation does not reasonably arise from the EEOC investigation.  See *Heard vs. United States Steel*, 2006 WL 3775942, p3 (U.S.D.C,.S.Dist. Ill., ), *supra*.  Likewise, in Triplett v. Midwest Wrecking Company, 155 F. Supp 2d 932,935 (N.D. Ill., 2001), the plaintiff was allowed to bring a retaliation complaint even without an EEOC charge of retaliation, since the plaintiff clearly documented that the was being fired because she reported discrimination. Again, here, there is no allegation that the discriminatory conduct worsened after the conduct was reported, or that the employer retaliated by terminating her.

Lastly, Plaintiff cites the U.S. Supreme Court, in *Federal Express Corp. v. Holowecki*, 128 S. Ct 1147 (2008) for the proposition that filling out an intake questionnaire, which is never delivered to the employer, is sufficient notice to support a subsequently filed complaint. However, Plaintiff conveniently ignores the Court's admonition that counsel must be careful not to apply rules and regulations under one statute, such as the Age Discrimination in Employment Act (ADEA) with other statutes enforced by the EEOC, such

as Title VII. Quite clearly, this holding would be limited to claims brought pursuant to the ADEA. *See also*, *Ojedis v. JetBlue Airways Corporation*, 2008 WL 961884 pp. 3-4(W.D. Tex.)(The Court considered the earlier Supreme Court decision in *Holowecki*, but noted that *Holowecki* was expressly limited to cases brought pursuant to the ADEA, and that in *Holowecki* the agency was <u>not</u> required to consider every intake questionnaire as a charge. Accordingly, the *Ojedis* Court dismissed plaintiff's claim under Title VII for discrimination for failure to exhaust administrative remedies notwithstanding the plaintiff's intake questionnaire.)

## CONCLUSION

Plaintiff could have, and should have, included her claim for retaliation within the EEOC charge. Defendant never had any notice of the claimed retaliation, nor did the plaintiff ever clearly articulate that her termination was in retaliation for any protected activity. As such, she had failed to exhaust her administrative remedies under Title VII, and her subsequent claim for retaliation, under Count II of her Complaint should be dismissed.

Defendant, KENWOOD HEALTHCARE CENTER, INC.

s/Gary D. Ashman
One of Defendant's Attorneys

ASHMAN & STEIN - #37710
Attorneys for Defendant
150 North Wacker Drive, Suite 3000
Chicago, Illinois  60606
(312) 782-3484
\\Garysec\shareddocs\garydocs\SW Management\Kenwood\Glover\Glover-reply Memorandum in support of motion to dismiss Count II.wpd

15

**DEFENDANT'S GROUP EXHIBIT 1**

# STATE OF ILLINOIS

## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF )
)
Ella Glover )
)
COMPLAINANT )        CHARGE NO. 2006CA0846
)
AND )
)
Kenwood Health Care Center, Inc. )
)
RESPONDENT )

## A P P E A R A N C E

_GARY ASHMAN  Ashman & Stein_____, hereby enter

Name of law firm/attorney/non-attorney representative

The appearance of _____Kenwood Health Care Center_____

(Name of Complainant or Respondent )

and our Appearance as their attorney (or non-attorney representative), and

request that copies of all Pleadings, Orders and other documents be served upon

the undersigned for said Party in lieu of service upon the Party.

_____GARY  ASHMAN_____

PRINT name of attorney/non-attorney Representative

_____ASHMAN & STEIN_____

Firm Name

_____150  North  Wacker  #3000_____

Address

_____Chicago       Il  60606_____

City                    State        Zip

_____312| 782 - 3484_____

Telephone

E-mail Address

_____312| 782 - 4279_____

Fax #

Dated: _____10| 18| 06_____   By: _____[signature]_____

Signature

# STATE OF ILLINOIS

## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF )
)
Ella Glover )
) CHARGE NO. 2006CA0846
COMPLAINANT )
)
AND )
)
Kenwood Health Care Center, Inc. )
)
RESPONDENT )

## A P P E A R A N C E

_Dennis J Kellogg_ , hereby enter

_____
Name of law firm/attorney/non-attorney representative

The appearance of _____ Ella Glover _____
(Name of Complainant or Respondent )

and our Appearance as their attorney (or non-attorney representative), and

request that copies of all Pleadings, Orders and other documents be served upon

the undersigned for said Party in lieu of service upon the Party.

_Dennis J Kellogg_
_____
PRINT name of attorney/non-attorney
Representative
_Dennis Kellogg_
_____
Firm Name
_105 W Madison_
_____
Address
_Chi    Ill    60602_
_____
City          State       Zip code
_(312) 782 4465_
_____
Telephone
_k law office @ yahoo.com_
_____
E-mail Address
_(312) 355-1177_
_____
Fax #

Dated: ___ 10/8/2001 ___        By: _____
Signature

DEFENDANT'S GROUP EXHIBIT 2

STATE OF ILLINOIS     )
                       ) ss

COUNTY OF COOK     )                   FILE NO (S)_2006CA0846

## AFFIDAVIT OF SERVICE

Gloria J. Polk, being first duly sworn, on oath states that she served a copy of the

attached **NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL**  on

each person named below by depositing same this 8th day of February, 2007, in the

U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST

CLASS MAIL, addresses as follows:

---

Mr. Dennis J. Kellogg
Sheats & Kellogg
Attorneys at Law
105 West Madison Street
Suite 1300
Chicago, IL  60602

Mr. Gary Ashman
Ashman & Stein
Attorneys at Law
150 North Wacker Drive
Suite 3000
Chicago, IL  60606

Gloria J. Polk

SUBSCRIBED and SWORN to before

me this 8th day of February, 2007.

NOTARY PUBLIC

OFFICIAL SEAL
KRYSTAL ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/16/10

## PLEASE NOTE:

The above-signed persons are responsible only for <u>mailing</u> these documents.  If you wish a review of the findings in this case you must complete the Request for Review form attached.  Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                          )
                                           )
ELLA M. GLOVER,                            )
                                           )
                    COMPLAINANT,           )          CHARGE NO.  2006CA0846
AND                                        )          EEOC NO.   21BA60064
                                           )
KENWOOD HEALTH CARE CENTER,                )
INC.,                                      )
                                           )
                    RESPONDENTS.           )

## NOTICE OF SUBSTANTIAL EVIDENCE
## AND NOTICE OF DISMISSAL

Mr. Dennis J. Kellogg                    Mr. Gary Ashman
Sheats & Kellogg                        Ashman & Stein
Attorneys at Law                        Attorneys at Law
105 West Madison Street                 150 North Wacker Drive
Suite 1300                              Suite 3000
Chicago, IL  60602                      Chicago, IL  60606

DATE:   February 8, 2007

REQUEST FOR REVIEW FILING DEADLINE DATE: March 15, 2007

        The enclosed investigation report notes that the charge in this matter involves the following allegations of civil rights violations:

## DISMISSAL

        YOU ARE HEREBY NOTIFIED that based on the investigation conducted by DHR, as reflected in the enclosed report, the Director has concluded that there is a lack of substantial evidence in support of allegation(s) B and C.

        ### PROCEDURE

        If you disagree with the dismissal of allegations(s) you may seek review by filing a "Request for Review" with the CHIEF LEGAL COUNSEL (CLC) of the Department, on the attached form by the filing deadline indicated above.

        If you decide to file a "Request for Review," Respondent will be notified by the CLC.

If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. (Charges filed under the Americans with Disabilities Act of 1990 are automatically given this review.) Please note that in order to receive such a review, it must be requested in writing to EEOC within 15 days of the CHIEF LEGAL COUNSEL's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2800, Chicago, IL 60661. Otherwise, EEOC will generally adopt DHR's actions in this case.

Whether you decide to file a "Request for Review" or not, DHR will conciliate only those allegations for which there is substantial evidence (see SUBSTANTIAL EVIDENCE). If conciliation efforts are unsuccessful, DHR will then file a Complaint with the Commission, only on the allegations for which there is substantial evidence.

## SUBSTANTIAL EVIDENCE

YOU ARE HEREBY NOTIFIED, the Director has concluded that there is substantial evidence to support allegation(s) for A.

PROCEDURE

The Illinois Human Rights Act (Act) mandates that the Department conduct conciliation as to those issues where substantial evidence has been found. Mr. Oral Bennett (312-814-6262), a DHR staff attorney, has been designated by the Director to CONCILIATE this case. Conciliation is a process in which a Department staff attorney facilitates settlement discussions with both parties via telephone.

The Department also offers MEDIATION, which is a form of conciliation. Mediation is a private, informal dispute resolution process in which a neutral third person, the mediator, meets with the parties to help reach a settlement agreement.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, a complaint will be prepared against Respondent, filed with the Commission and notice of such filing shall be served on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission. However, if Complainant rejects an offer which the Department determines will eliminate the effects of the violations charged and prevent their repetition, the Department will dismiss the charge, pursuant to Section 7A-103(D) of the Act.

IT IS THE RESPONSIBILITY OF THE PARTIES TO INITIATE DISCUSSIONS IMMEDIATELY AFTER RECEIPT OF THIS NOTICE.  THEREFORE, PLEASE REVIEW THE ENCLOSED INFORMATION AND CONTACT THE ASSIGNED ATTORNEY NO LATER THAN 5 DAYS AFTER RECEIPT OF THIS NOTICE WITH YOUR DECISION EITHER TO MEDIATE OR CONCILIATE.

Conciliation of issues with Substantial Evidence findings does not preclude your filing a Request for Review of the issues the Department dismissed, as described above.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPOINTMENT IS REQUIRED, CALL 1-312-353-2713 OR 1-800-669-4000.

DEPARTMENT OF HUMAN RIGHTS

Rocco J. Claps
Director

NOD/NOSE
2/03

STATE OF ILLINOIS    )
                            ) ss

COUNTY OF COOK    )              FILE NO (S)  2006CA0846

## <u>AFFIDAVIT OF SERVICE</u>

Gloria J. Polk, being first duly sworn, on oath states that she served a copy of the

attached **<u>NOTICE OF SUBSTANTIAL EVIDENCE AND NOTICE OF DISMISSAL</u>** on

each person named below by depositing same this 8th day of February, 2007, in the

U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST

CLASS MAIL, addresses as follows:

---

Mr. Dennis J. Kellogg
Sheats & Kellogg
Attorneys at Law
105 West Madison Street
Suite 1300
Chicago, IL 60602

Mr. Gary Ashman
Ashman & Stein
Attorneys at Law
150 North Wacker Drive
Suite 3000
Chicago, IL 60606

_____
Gloria J. Polk

SUBSCRIBED and SWORN to before

me this 8th day of February, 2007.

_____
        NOTARY PUBLIC

OFFICIAL SEAL
KRYSTAL ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/16/10

## <u>PLEASE NOTE:</u>

The above-signed persons are responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case you must complete the Request for Review form attached. Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Ella Glover
**Respondent:** Kenwood Health Care Center, Inc.

**IDHR Charge No.** 2006CA0846
**EEOC Charge No.** 21BA60064

**Investigator:** Emily Kroker   **Supervisor:** Pamela Williams   Date: February 5, 2007

**Issue/Basis:**

A.     Harassment/Age, 61
B.     Discharge/Age, 61
C.     Discharge/Physical Handicap, Herniated Disc Disorder

**Finding:**

A.     Substantial Evidence
B.     Lack of Substantial Evidence
C.     Lack of Substantial Evidence

**Jurisdiction:**

| | |
|---|---|
| Alleged violation: | A.     August 2005 through September 7, 2005 |
| | B & C. September 7, 2005 |
| Charge filed: | October 12, 2005 |
| Charge perfected: | October 12, 2005 |
| Amendments: | Technical Amendment |
| Number of Employees: | 209 |

**Verified Response**

Received:  December 8, 2005
Timely:   _ X _ Untimely: _____
If untimely, good cause shown: Yes _____ No _____

**Employment Data:**

According to Respondent's EEO-1 Report (Exhibit Z), Respondent employs 209 individuals.  According to information provided by Respondent (Exhibit T), 93 (44%) of these were over the age of 40.  Respondent maintains that they do not keep track of the handicap status of their employees.

**Uncontested Facts:**

1.  Respondent is a nursing and rehabilitation facility.
2.  Complainant was hired on September 29, 1992, as a Certified Nurse's Assistant/Rehabilitation Aide.
3.  Complainant did not have a permanent assignment within Respondent, but floated between floors as needed.

2006CA0846
Page 2

4. Complainant was assigned to work on the fourth floor for the entire month of September 2005.
5. Barbara Bolden (34, non-handicapped) was the Charge Nurse on the fourth floor at the time of Complainant's departure from Respondent.
6. Complainant was terminated on September 7, 2005.

## INVESTIGATION SUMMARY

### Complainant's Allegations-Count A

Complainant, a Certified Nurse's Assistant/Rehabilitation Aide, alleges that from August 2005 until September 7, 2005, she was harassed by Barbara Bolden, Charge Nurse, as a result of her age, 61. Complainant further alleges that Bolden repeatedly made disparaging remarks referencing Complainant's age, stating that Complainant was too old to complete nursing duties, that Complainant should quit because she was too old and assigned Complainant the hardest tasks to complete within a short period of time.

### Respondent's Defenses

Respondent denies that it discriminated against Complainant because of her age, 61. Respondent contends that Bolden did not make disparaging remarks about Complainant's age and did not assign Complainant to the hardest tasks. Respondent further contends that Complainant did not indicate to anyone at Respondent that she believed she was being harassed because of her age or for any other reason.

### Factual Findings

1. The investigation revealed that Respondent prohibits harassment based on age, which applies to all personnel involved in its operations (Exhibit EE). If an individual feels that they have been harassed, they should file a complaint with a member of management not involved in the incident, and an objective investigation will be conducted. Respondent advises employees that they should make Respondent aware of any harassment as soon as it takes place. If Respondent determines that harassment has taken place, they will take the appropriate action with regards to the nature of the complaint.

2. Barbara Bolden (34, non-handicapped), Former Charge Nurse, stated that she never made any comments about Complainant's age or said Complainant was "too old." Bolden stated that Complainant was given assignments on her floor only when other Certified Nursing Assistants were absent. Bolden stated that when Complainant worked on her floor, she gave her the assignment of the absent individual. Bolden stated that she did not determine what patients Complainant would be assigned or in which location, but it was based only on the needs of the floor. Bolden stated that Complainant was often permitted to work with another Certified Nursing Assistant to carry out assignments that normally would be given to only one person, and in that way, Complainant was "better off" than most. The

2006CA0846
Page 3

investigation revealed that on December 13, 2005, Bolden wrote that at no time did she ever make any comment concerning Complainant's age (Exhibit U). Bolden wrote that Complainant was a fill-in for whatever assignment that she received. Bolden wrote that she never discriminated against Complainant because of her age.

3. Brigitte Grossman (55, non-handicapped), Information Officer, stated that Complainant did not report to anyone at Respondent that Bolden was harassing her because of her age. Grossman stated that after Respondent received Complainant's complaint, they conducted an investigation into Complainant's allegations by interviewing Bolden and other employees. Grossman stated that they were unable to corroborate Complainant's allegations that comments were made about her age, or that difficult assignments were distributed unequally.

4. Grossman stated that the Charge Nurses were responsible for distributing floor assignments to employees. Bolden stated that she did have supervisory authority over Complainant when Complainant was working on her floor. The investigation revealed that the Charge Nurse directs the overall flow of care within the nursing unit (Exhibit A). They give directions to the Nurses, Ward Clerk, and Certified Nursing Assistants and direct and organize unit staff.

5. Complainant stated that she had worked with Bolden before at Respondent, but that in approximately the second week of August 2005, while Complainant was working to carry out her assignments, Bolden made numerous statements that Complainant had "been there too long," she was "too old," took too many privileges and needed to quit. Complainant stated that Bolden consistently made comments like that until her termination on September 7, 2005. Complainant stated that in approximately the fourth week of August, Bolden told her that she was "too old to get a job anywhere else." Complainant stated that Bolden assigned her to the hardest tasks available on the floor for the entire month of August, such as being assigned to patients that needed to be lifted entirely by the assigned Certified Nursing Assistant. Complainant stated that she was regularly given room assignments that required her to lift the heaviest patients on the floor, in rooms 401 through 408, which was difficult for her to do. Complainant stated that she requested that Bolden give her alternate assignments, but she failed to do so. Complainant stated that she told Deloris Randall (62, non-handicapped), CNA Supervisor, that she was having problems with Bolden.

6. Bolden stated that Complainant never complained about the assignments she was given, or told Bolden that she could not carry out her duties. Bolden stated that Complainant did not request alternate assignments.

7. Grossman stated that Respondent makes an effort to distribute assignments as fairly as possible to all Certified Nursing Assistants. Grossman stated that there is no concentration of heavy patients on the fourth floor, but that the weights of the patients vary throughout the facility. Grossman stated that the same assignments

2006CA0846
Page 4

that Complainant received were also given to other Certified Nursing Assistants, and that the assignments did not change based on which Certified Nursing Assistant was working. The investigation revealed that Complainant was assigned rooms 401 through 408 six times from August 1, 2005 through September 6, 2005 (Group Exhibit V). On one of those days, Complainant was assigned to work with another Certified Nursing Assistant, while other employees were working by themselves. When Complainant was not placed there, rooms 401 through 408 were assigned to Certified Nursing Assistants Marganetta Bursey (23), Darmisla Nixon (26), Alice Campbell (63), Joeann Frazier (33), Robin Baisten (30), Trimeklia McDaniel (27), Sequila Travis (27), Latonya Ramson (27), Jennifer Stubbs (42), Irma Hall (61), Tenisha Wright (20), and Ruth Halloman (43). The investigation revealed that on the fourth floor, there are four wings (Exhibit W). In the assignment which Complainant alleged was the hardest, there were 15 patients. The other three wings contained sixteen patients each.

8. Grossman stated that there have been no other harassment complaints made against Bolden or any other employees or supervisors at Respondent. The investigation revealed that Deloris Randall wrote on April 24, 2006 (Exhibit Y) that Complainant never at any time reported that Bolden was giving her a difficult assignment or harassing her because of her age.

9. Alice Campbell (63, non-handicapped), Former Certified Nursing Assistant, stated that she heard Bolden say in approximately August 2005, "you old employees think you can do what you want" to Complainant. Campbell stated that she took it to mean that Bolden was referring to employees who had worked at Respondent for a long time, not Complainant's age. Campbell stated that she and Complainant did have the hardest assignments on the fourth floor when they were assigned there. Campbell stated that Complainant told her that Bolden was giving her a hard time.

**Analysis**

The Department's investigation revealed that Respondent denies that comments were made about Complainant's age or that she was distributed work assignments unequally. Respondent maintains that Complainant did not report any harassment to management at Respondent. The investigation revealed that the Charge Nurse is assigned to giving directions to employees on the floor. Respondent maintains that there have not been any other harassment complaints made at Respondent.

**Finding and Conclusion**

A finding of **Substantial Evidence** is recommended because:

The evidence shows that Respondent prohibits harassment based on age. Employees are advised to contact management if they feel they have been harassed and an investigation

2006CA0846
Page 5

will be conducted. Complainant maintains that Bolden made repeated comments about her age and told her she was too old to work at Respondent in addition to being assigned the hardest tasks within the unit. Respondent denies that Bolden made the comments that Complainant alleges. Complainant maintains that she reported the conduct to her supervisor, which Respondent also denies. The evidence does not show that assignments were distributed to Complainant differently than younger Certified Nursing Assistants. However, the evidence also shows that the alleged harasser had the authority to direct Complainant while Complainant was assigned to her floor. As the alleged harasser had supervisory authority over Complainant, Respondent is strictly liable for the conduct. There is conflicting testimony between Complainant and Respondent regarding the comments that Complainant alleges were made which referred directly to her age, therefore this case should be sent to a trier of fact for a decision.

**Complainant's Allegations-Counts B & C**

Complainant, a Certified Nurse's Assistant/Rehabilitation Aide, alleges that on September 7, 2005, she was discharged as a result of her age, 61 (Count B) and her physical handicap, herniated disc disorder (Count C). Complainant further alleges that the reason given for the discharge was patient neglect, which she denies occurred. Complainant alleges that other, younger Certified Nurse's Assistants who have not complied with their work duties were not discharged, such as Carolyn Scott, Erick Devers, Kenneth Mixon, Catrina Wright, and Robin Baston. Complainant further alleges that her medical condition is unrelated to here ability to perform the essential functions of her job duties as a Certified Nurse's Assistant/Rehabilitation Aide.

**Respondent's Defenses**

Respondent denies that it discriminated against Complainant because of her age and her physical handicap. Respondent contends that Complainant was discharged for patient neglect, insubordination and inconsiderate treatment after she was instructed to clean up a patient, chose not to and left the patient sitting in her own feces during her lunch hour.

**Factual Findings**

1. The investigation revealed that abusive and inconsiderate treatment of residents, and neglect of duty are both violations that procedurally result in discharge (Exhibit D). The investigation revealed that Complainant was assigned to continually check each resident assigned to her for cleanliness and personal hygiene (Exhibit G).

2. The investigation revealed that Respondent received a letter on September 7, 2005 from "a Concerned Visitor" who was on the fourth floor (Exhibit H). The visitor indicated that there was a patient sitting in her room full of feces, which the visitor smelled all the way in the hallway. The visitor indicated that the patient, Felicia, told her that her nurse "just pushed her in the room full of feces and left her there without cleaning her." The letter indicated that the patient sat looking

2006CA0846
Page 6

sad and afraid, and the incident had occurred around 1:15 p.m. Grossman stated that once the letter was received by Respondent, an investigation was conducted to determine what had occurred.

3. A statement dated September 7, 2005 (Exhibit I) indicates that patient Felicia Ivy and her roommate Geneva Cayolle were interviewed regarding allegations made by a visitor to Respondent. The statement indicates that Ivy was wheeled into her room on September 1, 2005, by her CNA who did not change her. Cayolle recalled the incident because the smell was very strong. Cayolle verified that Complainant was the staff who was assigned to her room, and was the employee who had wheeled Ivy into her room without changing her. Both residents confirmed that Complainant changed Ivy after she returned from lunch, over an hour later.

4. Bolden stated that she told Complainant that Ivy was soiled before Complainant left for lunch. Bolden stated that Complainant told her that she "wasn't missing her lunch." Bolden stated that she reported the behavior to her supervisor, Jackie Thomas (42, non-handicapped). A statement signed by Bolden (Exhibit J) indicates that Complainant was informed that her resident required changing before she went to lunch. Bolden wrote that she made the supervisor aware that Complainant had not changed Ivy before she went to lunch. The investigation revealed that when an employee is on her lunch break, the employee is interrupted by a Supervisor during the break, when the employee has completed the Supervisor's instruction, the lunch time will be given back to the employee (Exhibit F).

5. A statement signed by Inell Pulliam (Exhibit K) indicates that she heard the fourth floor nurse tell Complainant that the resident in Room 407-2 needed changing following a bowel movement. It indicates that Complainant went to lunch without asking another CNA to change the patient.

6. An Investigation Report dated September 7, 2005 (Exhibit L) indicates that the Assistant Director of Nursing and the Abuse Coordinator interviewed the resident, her roommate, staff on the floor and residents. The conclusion of the investigation was that Complainant was discharged for her behavior and violating Respondent's policy/work rules.

7. Grossman stated that based on the results of the investigation, Respondent determined that Complainant had violated Respondent's work rules with her conduct on September 1, 2005. A Disciplinary Action Form dated September 7, 2005 (Exhibit M) indicates that Complainant was terminated for neglect of duty, inconsiderate treatment of a resident, as well as insubordination.

8. The investigation revealed that Carolyn Scott (54, non-handicapped), Nursing Aide, had four disciplinary actions taken against her beginning in 2002 (Group Exhibit B). The investigation revealed that Scott had no violations similar to

2006CA0846
Page 7

Complainant's. The investigation revealed that Erick Devers (40, non-handicapped), Nursing Aide, had four disciplinary actions taken against him beginning in 2001. Devers was given a five-day suspension, last chance agreement for inconsiderate treatment towards staff. The investigation revealed that Devers did not have any instances of inconsiderate treatment towards a resident or neglect of duty. Kenneth Mixon (40, non-handicapped), Nursing Aide, received eight disciplinary actions beginning in October 2002. Mixon was given a three-day suspension after inconsiderate treatment to staff. Mixon had no violations of inconsiderate treatment to residents or neglect of duty. Catrina Wright (35, non-handicapped), Nursing Aide, received six disciplinary actions beginning in 2004. Wright had no violations of inconsiderate resident treatment or neglect of duty. Robin Baston (35, non-handicapped), Nursing Aide, received five disciplines beginning in 2005. Baston received a three-day suspension with a last chance agreement for not providing the appropriate undergarment for a resident. Grossman stated that at no time were any of Complainant's named comparatives found to have knowingly left a soiled patient in their room without changing them.

9. The investigation revealed that on November 18, 2004, Certified Nursing Assistant Deirdre Walker (24, handicap status unknown) was terminated for six infractions of Respondent's policies, including neglect of duty (Exhibit O). Tina Yearby (32, handicap status unknown), Nursing, was terminated on February 21, 2005 for being verbally and physically abusive towards a resident under her direct care (Exhibit P). Arlene Anderson (45, handicap status unknown), Certified Nursing Assistant, was terminated on January 5, 2005 for failing to address the needs of residents, residents were soiled and ungroomed (Exhibit Q). Tashina Johnson (18, handicap status unknown), Nursing, was terminated on December 21, 2004 for exhibiting abusive treatment towards resident (Exhibit R).

10. Grossman stated that they had no information that Complainant was diagnosed with a herniated disc disorder. Grossman stated that Complainant sustained an injury on the job in 2003, during which time Complainant was on light duty and Respondent was provided with medical information from her doctor. Grossman stated that the last report that Respondent received regarding Complainant's condition was on August 5, 2003. The investigation revealed that on August 5, 2003, was released to work full duty (Group Exhibit S).

11. The investigation revealed that Complainant was diagnosed with bilateral lubosacral radiolopathy on July 3, 2003 (Exhibit FF). The condition is likely to be chronic and could result from disc disease, arthritis and a work-related injury. The condition is not transitory and significantly debilitating. On July 3, 2003, Frank M. Phillips, M.D. concluded from an MRI test that Complainant had herniation to some of the discs in her back (Exhibit II). Complainant stated that she told Bolden about her condition.

2006CA0846
Page 8

12. Complainant stated that while she was on her way to lunch on September 1, 2005, Bolden told her that Ivy had had a bowel movement that Complainant was required to clean up when she returned from lunch. Complainant stated that she told Respondent that, but she was terminated anyway. A statement signed by Complainant (Exhibit N) indicates that she did not leave the resident without the Charge Nurse not knowing, but that Bolden told Complainant to go to lunch and clean Ivy up when she got back, so that is what Complainant did. Complainant stated that Ivy agreed that she had not left her in her room soiled. Complainant stated that Bolden could have told another one of the Certified Nursing Assistants to clean her while Complainant was still at lunch, but she did not. Complainant stated that employees regularly neglect their duties and are not terminated.

13. Campbell stated that she was not working on September 1, 2005, but was working in Ivy and Cayolle's room with Complainant on September 6, 2005. Campbell stated that Cayolle told her that Complainant had left Ivy soiled a few days before. Campbell stated that Complainant denied that she had and then asked Ivy whether she had been left unclean. Campbell stated that Ivy confirmed that Complainant had not left her soiled while she went to lunch.

### Analysis

The Department's investigation did not reveal that Respondent discriminated against Complainant because of her age or her physical handicap, herniated disc disorder. The investigation revealed that employees may be terminated for neglect of duties and abusive or inconsiderate treatment of residents. The investigation revealed that Respondent had reason to believe that Complainant engaged in the behavior for which she was terminated.

### Finding and Conclusion

A finding of **Lack of Substantial Evidence** is recommended because:

The Department's investigation revealed that Complainant is a handicapped individual according to the Illinois Human Rights Act. The evidence shows that employees may be terminated for abusive or inconsiderate treatment of residents and for neglect of duty. The evidence shows that Respondent had reason to believe that Complainant failed to clean one of her patients that she knew was soiled prior to going on her lunch break, resulting in her discharge. Complainant concedes that she was aware that one of her patients was soiled prior to going on her lunch break. The evidence shows that none of Complainant's named comparatives intentionally left one of their patients soiled while they went on a break. The evidence shows that Respondent has terminated younger, non-handicapped employees for similar offenses. The investigation showed that there was no animus based on age or handicap status.

2006CA0846
Page 9

## Witness Information

1. Complainant
   C/o Dennis J. Kellogg
   Sheats & Kellogg
   105 W. Madison
   Chicago, IL 60602
   (312) 782-6463

2. Brigite Grossman (FFC) (55, non-handicapped)
   Information Officer
   C/o Gary Ashman, Attorney
   150 N. Wacker, #3000
   Chicago, IL 60606
   (312) 782-3484

3. Deborah Missal (FFC) (41, non-handicapped)
   Director of Nursing
   C/o Gary Ashman, Attorney
   150 N. Wacker, #3000
   Chicago, IL 60606
   (312) 782-3484

4. Alice Campbell (63, non-handicapped) (telephone interview)
   Former Certified Nursing Assistant
   8641 S. May
   Chicago, IL 60680
   (773) 224-9595

5. Inell Lewis-Pullman
   8220 S. Oglesby
   Chicago, IL 60617
   Witness stated on December 8, 2006 that she did not wish to participate in the
   Department's investigation.

6. Wanda Taylor Tappler
   749 E. 73rd Street
   Chicago, IL 60619
   Unable to contact witness.    Contact letter sent on November 2, 2006.
   Complainant did not provide telephone number.  Respondent maintains that they
   do not have a current telephone number for witness.

2006CA0846
Page 10

7. Barbara Bolden (34, non-handicapped) (telephone interview)
   Former Charge Nurse
   1187 E. 82nd Street
   Chicago, IL 60619
   (773) 419-0956

## Exhibit

A. Job description for Charge Nurse.
B. Disciplinary Actions for Carolyn Scott, Erick Devers, Kenneth Mixon, Catrina Wright and Robin Baston.
C. Non-Discrimination Policy.
D. Respondent's Work Rules.
E. Policy/Work Rules signed by Complainant.
F. Punch-In/Punch-Out Policy.
G. Certified Nurse Aide/Duties Inservice.
H. Letter to Respondent from a Concerned Visitor dated September 7, 2005.
I. Universal Progress Notes dated September 7, 2005.
J. Statement signed by Barbara Bolden.
K. Statement signed by I. Pulliam.
L. Investigation Report dated September 7, 2005.
M. Disciplinary Action Form dated September 7, 2005.
N. Statement signed by Complainant.
O. Disciplinary Action Form for Deirde Walker.
P. Disciplinary Action Form for Tina Yearby.
Q. Disciplinary Action Form for Arlene Anderson.
R. Disciplinary Action Form for Tashina Johnson.
S. Medical documents for Complainant.
T. Respondent employees by age.
U. Statement signed by Barbara Bolden dated December 13, 2005.
V. Work assignments for fourth floor from August 1, 2005 through September 6, 2005.
W. Fourth floor assignments by wing.
X. Statements signed by Robin Hatter, John Gebert, Jacqueline Randall, Sonia Towns, and Deloris Randall.
Y. Statements signed by Deloris Randall and Debbie Missal.
Z. Respondent's EEO-1 Report.
AA. Resolution of Disputes agreement.
BB. Collective Bargaining Agreement.
CC. Employees terminated.
DD. Employees engaging in inconsiderate treatment to residents.
EE. Harassment Policy.
FF. Medical questionnaire dated November 21, 2006.
GG. Statement signed by Alice Campbell.
HH. Letter signed by Frank M. Phillips, M.D. dated July 3, 2003.
II. Statement signed by Irma Hall.

**DEFENDANT'S GROUP EXHIBIT 3**

(Rev. 10/18/04) IHRC007

STATE OF ILLINOIS

HUMAN RIGHTS COMMISSION

**Entered**

FEB - 5 2008

Human Rights Commission
Administrative Law
Section

IN THE MATTER OF:                )
                                 )
                                 )
                                 )
GLOVER                           )
_____        )    CHARGE NO: 2006 ____ 896
            Complainant(s),)          EEOC NO: 21 BA 60064
                                 )    ALS NO: 07-220
and                              )
                                 )
Kenwood Healthcare               )
_____        )
                                 )
            Respondent(s).)

<u>ORDER</u>

This cause coming on to be heard on status + on the motion to withdraw of Complainant's counsel, counsel for all parties ~~being~~ being present, It Is Hereby Ordered That:

1) Complainant's counsel, Dennis Kellogg, is granted leave to withdraw;

2) ~~being~~ Respondent's counsel is directed to serve a copy hereof to the Complainant, and file proof of such service with the Commission.

3) Complainant has 21 days, through February 26, 2008, to secure substitute counsel or file her pro se appearance; and

4) This cause is set for status on March 4, 2008 at 10:00 am, without further notice

Name: _A. Ashman_____          February 5, 2008
Atty. for: _Resp_____      ENTERED
Firm Name: _Ashman & Stein_____
Address: _150 N. Walker #3900____      _Michael J. Evans_____
City/State/Zip: _Chgo IL 60606___      ADMINISTRATIVE LAW JUDGE
Telephone: _312/ 782-3484_____

## STATE OF ILLINOIS
## HUMAN RIGHTS COMMISSION

RECEIVED

FEB 2 8 2008

HUMAN RIGHTS COMMISSION

| | | | |
|---|---|---|---|
| ELLA M. GLOVER, | ) | | |
| Complainant, | ) | Charge No: | 2007CA0846 |
| | ) | EEOC No.: | 21BA60064 |
| v. | ) | | |
| | ) | ALS Nos: | 07-220 |
| KENWOOD HEALTH CARE | ) | | |
| CENTER, INC. | ) | Judge: | Gertrude L. McCarthy |
| Respondent. | ) | | |

## NOTICE OF FILING

To:    Gary Ashman
       Ashman & Stein
       150 North Wacker Drive, Suite 3000
       Chicago, Illinois 60606

PLEASE TAKE NOTICE that on February 28, 2008, Complainant filed with the Illinois

Human Rights Commission the attached *Certificate Of Service*, reflecting service of Appearance of

Scott Fanning and Uche Asonye on Behalf of Complainant, upon Respondent's counsel, a copy of

which is hereby served upon you.

Respectfully Submitted,
Ella Glover,

By: _____
One of Complainant's Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283693
Scott C. Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110

**STATE OF ILLINOIS**
**HUMAN RIGHTS COMMISSION**

RECEIVED

FEB 2 8 2008

HUMAN RIGHTS COMMISSION

| | | |
|---|---|---|
| ELLA M. GLOVER, | ) | |
| Complainant, | ) | Charge No:   2007CA0846 |
| | ) | EEOC No.:   21BA60064 |
| v. | ) | |
| | ) | ALS Nos:   07-220 |
| KENWOOD HEALTH CARE | ) | |
| CENTER, INC. | ) | Judge:   Gertrude L. McCarthy |
| Respondent. | ) | |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the following:

1.   **APPEARANCE OF SCOTT FANNING ON BEHALF OF COMPLAINANT**
2.   **APPEARANCE OF UCHE ASONYE ON BEHALF OF COMPLAINANT**

to be served on the following person(s) at their respective address(es), listed below, by first class mail on February 28, 2008:

Gary Ashman
Ashman & Stein
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606

Respectfully Submitted,
Ella M. Glover,

By
One of Complainant's Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283693
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois  60603
(312) 795-9110

**DEFENDANT'S EXHIBIT 4**

**Joint Committee on Administrative Rules**

# ADMINISTRATIVE CODE

TITLE 56: LABOR AND EMPLOYMENT
CHAPTER II: DEPARTMENT OF HUMAN RIGHTS
PART 2520 PROCEDURES OF THE DEPARTMENT OF HUMAN RIGHTS
SECTION 2520.360 AMENDMENT

---

**Section 2520.360  Amendment**

a)    A charge may be amended to cure technical defects or to set forth additional facts or allegations related to the subject matter of the original charge, and such amendments shall relate back to the original filing date.

b)    A charge may be amended to include new harms or bases which occurred within 180 days of the amendment or, for charges under Article 3 of the Act, one year of the date of the amendment.

c)    A charge may be amended to substitute or name additional respondents. Such an amendment will relate back to the original filing date if at the time of the amendment a separate charge could have been timely filed against such additional respondent or such additional respondent had timely notice of the original charge and the fact it might be involved therein.  Mere misnomer of a party may be cured at any time.

d)    If a party dies during pendency of the proceedings, the charge may be amended to substitute the legal representative, or other person with a legally recognized interest in the decedent's estate, for the deceased.

(Source:  Amended at 18 Ill. Reg. 16829, effective November 4, 1994)