IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ELLA GLOVER, | ) |
| Plaintiff, | ) Case No. 08 C 2030 |
| v. | ) Judge Virginia M. Kendall |
| KENWOOD HEALTHCARE CENTER, INC. | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ella Glover ("Glover") and defendant Kenwood Healthcare Center ("Kenwood") each move the Court to reconsider its September 30, 2010 Order ("Order") granting in part and denying in part Kenwood's motion for summary judgment. Specifically, Glover moves the Court to reconsider its grant of summary judgment to Kenwood on her claim of retaliation in Count II and Kenwood moves the Court to reconsider its denial of summary judgment on Glover's age-based termination claim in Count III. The Court allowed for supplemental briefing on these issues and, for the following reasons, grants in part both motions: the Court finds that Glover has sufficiently demonstrated retaliation under the direct method based on her termination and therefore denies summary judgment to Kenwood on Count II; the Court also finds that Glover has failed to sufficiently demonstrate that she was terminated because of her age and therefore grants Kenwood summary judgment on Count III. Accordingly, Glover may proceed to trial on Count II.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(e) serves the limited function of allowing courts to correct manifest errors of law or fact or consider newly discovered material evidence. *See Bordelon*

*v. Chi. Sch. Reform Bd. Of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (manifest error is the wholesale disregard, misapplication, or failure to recognize controlling precedent). However, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance legal arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Reconsideration is only appropriate when "the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotations omitted). Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

## DISCUSSION

**I.     Count II**

Glover moves the Court to reconsider its grant of summary judgment to Kenwood on her retaliation claim alleged in Count II.[1]

The Court previously found that Glover did not demonstrate facts sufficient to prove that she was retaliated against under either the direct or indirect methods. The Court found that additional work assignments that Glover complained of did not constitute an adverse retaliatory action. While the Court concluded that Glover's termination constituted an adverse retaliatory action, it also found that Glover was unable to demonstrate causation under the direct method or that she was treated less

---

[1] Throughout this Opinion, the Court relies on the findings of fact in its prior Order.

favorably than similarly situated employees under the indirect method.

Glover contends that Kenwood did not explicitly move for summary judgment on Count II. Glover, however, also stated in open court that there was no additional evidence that she would have presented had she known that the Court was considering a motion for summary judgment on Count II. Specifically, Glover stated at the October 18, 2010 status hearing that she was not seeking to reopen discovery; rather, Glover sought to present arguments in supplemental briefing that she did not present in her response to Kenwood's motion for summary judgment. The Court granted Glover's request to present arguments regarding Count II's retaliation claim and now grants her Motion to Reconsider with respect to her retaliation claim for termination pursuant to the direct method.

### A. Adverse Employment Action

Glover re-raises the arguments made in her response briefs to Kenwood's motion for summary judgment, re-alleging that Barbara Boldon's ("Boldon") verbal harassment of Glover and her assignment of additional residents to Glover constitute an adverse retaliatory action. The Court disagrees for the reasons stated in its previous Order. Boldon's verbal comments to Glover—that Glover should take on an additional resident because she complained about age discrimination; that Glover should quit—would not prevent a reasonable employee from engaging in protected activity. Glover did not specify what actual additional impact Boldon's assignment of an additional resident had on Glover, nor did Glover identify how she was burdened by the assignment or whether she even completed it. As the Court previously noted, the reassignment of job duties is not automatically actionable. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (snubbing, petty slights, and minor annoyances would not deter reasonable employees from engaging in protected

activity). Therefore, the Court finds that Glover fails to demonstrate that Boldon's words and actions in immediate response to Glover's complaint of age discrimination constituted an adverse retaliatory action. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1988). As such, Glover does not survive summary judgment on this retaliatory issue pursuant to either the direct or indirect method.

## B.  Suspicious Timing of Termination

Glover also argues that the suspicious timing of her termination raised a casual inference and satisfied her claim of retaliation pursuant to the direct method.

Under the direct method, Glover must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) a causal connection between the two. *See Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009). The Court previously found that Glover satisfied the first and second elements but, in its prior Order, held that Glover failed to demonstrate a causal connection between the two. The Court now reconsiders its prior holding.

Glover correctly notes that suspicious timing may be sufficient to demonstrate a causal connection between a protected activity and an adverse retaliatory action under the direct method. *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011) ("The district court's apparent belief that timing *never* supports an inference of causation is untenable") (emphasis in original). Mere suspicion, however, "is not enough to get past a motion for summary judgment." *Id*. Therefore, the Court looks to whether "the discharge took place on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) (citation omitted).

The Court now finds that Glover has presented evidence of suspicious timing sufficient to support an inference of causation. Glover worked at Kenwood for nearly thirteen years without any

disciplinary actions. Glover alleges that, during the third week of August 2005, she complained to Louis Randall ("Randall"), the supervisor of Certified Nursing Assistants ("CNA's") at Kenwood, that Boldon was harassing her because of her age. One day after Glover complained about perceived age discrimination, Boldon confronted Glover and assigned Glover an additional resident. A week after Glover complained to Randall, on September 1, 2005, Boldon accused Glover of disobeying an instruction to clean a soiled resident, Felicia Ivy ("Ivy"). Boldon reported Glover to Boldon's supervisor that day.

While the events surrounding the incident with Ivy are disputed—whether and when Boldon instructed Glover to clean Ivy; whether Glover reasonably thought that the CNA's covering for her during her lunch break would ensure that Ivy was clean; whether Ivy was left soiled for an hour or was attended to immediately after she soiled herself—it is undisputed that Glover was terminated as a result of it on September 7, 2005. Moreover, the facts surrounding Kenwood's investigation into the incident with Ivy are unclear at best: Ivy herself gave conflicting reports, at times stating that she was left soiled and neglected by Glover and at other times declaring that Glover immediately cleaned her. The investigation was prompted by an anonymous fax received by Kenwood at 1:13 p.m. on September 7 and the investigation report was completed by 1:30 p.m. In addition, the authors or the investigation report—Jacqueline Thomas ("Thomas"), Boldon's supervisor, and April Watkins ("Watkins"), Kenwood's Director of Social Services—stated that they spoke to both Boldon and Glover in creating the report, however both Boldon and Glover claim that they were not interviewed as part of the investigation.[2]

---

[2] Glover also alleges in her Motion to Reconsider that, under the Supreme Court's interpretation of the cat's paw theory in *Staub v. Proctor Hospital*, the fact that Kenwood claimed to conduct an independent investigation does not protect it from liability. 131 S.Ct. 1186 (2011). In *Staub*, the Supreme Court held that an employer was liable for

5

While "[s]uspicious timing is rarely enough to create a triable issue . . . in an extreme case . . . where the adverse impact comes on the heels of protected activity, it is." *Casna*, 574 F.3d at 427 (internal quotations and citations omitted). Here, after nearly thirteen years of discipline-free work, Glover complained to a supervisor about age discrimination and, within two weeks, was terminated. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997) (finding that a two-to-three day period between the filing of a complaint and termination established a *prima facie* case of retaliation and noting that the Seventh Circuit has "found the causal nexus sufficiently demonstrated when the time period between the filing of a complaint and the adverse action was one day or one week") (citations omitted). The Court also notes that the disputed incident giving rise to Glover's termination occurred only one week after Glover's complaint, though another week elapsed before she was terminated following a hasty investigation. Therefore, the Court finds that Glover has demonstrated the third element—a causal connection between her complaint and her termination—required to establish retaliation under the direct method because the timing of her termination came "so close on the heels of [Glover's] protected act that an inference of causation is sensible." *Loudermilk*, 636 F.3d at 315. As such, the Court reverses its previous grant of summary judgment to Kenwood on Count II under the direct method.

C. **Similarly Situated Employees**

Glover also moves the Court to reconsider its previous finding that she has not demonstrated

---

violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(a) when a supervisor intended to cause an adverse employment action by performing an act motivated by anti-military animus and that act was the proximate cause of the adverse employment action. *See id*. at 1193 ("Since a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it; and when discrimination is a motivating factor in his doing so, it is a motivating factor in the employer's action") (internal quotation omitted). Here, however, since the Court finds that Glover may proceed under the direct method, the Court need not address the applicability of the cat's paw theory to Kenwood's investigation or the dispute regarding whether or not Boldon was interviewed as part of the investigation.

sufficient facts to proceed on her retaliation claim under the indirect method. The Court, in its Order, found that Glover was unable to demonstrate that she was treated less favorably than similarly situated employees. The Court has allowed Glover to present arguments in her Motion to Reconsider that prove otherwise: Glover now argues that Thomas, Boldon, Eric Devers ("Devers"), and other CNA's that covered for Glover during her lunch break and who worked on the night shift are all similarly situated employees who were treated more favorably than she was.[3] The Court disagrees.

Similarly situated employees are those that are directly comparable to Glover in all material respects. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). Factors relevant to the Court's inquiry include whether the employees report to the same supervisor, were subject to the same standards, and had engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (citation omitted).

Here, Glover may not rely on Thomas or Boldon as similarly situated employees because they are supervisors while Glover is a CNA and rehabilitation aide. *See Goodwin v. Bd. of Trs. of Univ. Of Ill.*, 442 F.3d 611, 618 (7th Cir. 2006) (noting that a more senior employee who "thus did not deal with the same supervisor" as the plaintiff, was not similarly situated to the plaintiff) (quotations and citation omitted); *see, e.g., Lupescu v. Napolitano*, 700 F.Supp.2d 962, 978-79 (N.D. Ill. 2010) (finding employees with "different titles, different supervisory duties, and different superiors" to not be similarly situated) (citation omitted). Nor may Glover rely on unnamed CNA's that covered for her during her lunch break and who worked the night shift because she has not alleged that they

---

[3] As noted above, Glover conceded at a status hearing on October 18, 2010 that she did not require any additional discovery to make these arguments.

report to the same supervisor that she does. *See Radue*, 219 F.3d at 619 (noting that similarly situated employees must share "common features essential to a meaningful comparison"); *see, e.g., Purley v. Bensenville Pub. Safety Dep't*, 2007 WL 2410453 at *8 (N.D. Ill. Aug. 20, 2007) (St. Eve, J.) (noting that plaintiff's failure to name who the allegedly similarly situated employees were prevented the court from being able to make a meaningful comparison between the unnamed officers and the plaintiff); *Haywood v. Evergreen Motor Cars, Inc.*, 2003 WL 21418248 at *5 (N.D. Ill. June 18, 2003) (St. Eve, J.) (noting that plaintiff cannot demonstrate other "unnamed employees" are similarly situated because he failed to allege that they dealt with the same supervisors as plaintiff). Indeed, Glover alleges that Boldon—Glover's supervisor—took a lunch break at the same time she did and was therefore not on the floor to supervise the CNA's that covered Glover during her lunch break. While Glover claims that the night shift workers often left residents soiled, she does not allege that they did so knowingly or that they ignored a supervisor's direct command to clean a resident. Nor does Glover allege that the night shift CNA's were supervised by Boldon.

Glover's attempt to hold Devers out as a similarly situated employee also fails. Glover describes a March 2004 incident where Devers noticed a soiled resident but did not clean the resident because a supervisor asked him to perform work in another area of the facility. The resident was eventually cleaned by a hospice aide two hours and forty-five minutes later and the resident suffered physical injury as a result. As an initial matter, the Court notes that Glover does not allege that Devers reported to the same supervisor that she did. Moreover, Devers was specifically instructed by his supervisor to attend to other residents in a different area of the facility. Conversely, Glover concedes that Boldon told her that resident Ivy had soiled herself and did not tell Glover that another CNA would clean her. Additionally, as Kenwood notes, Devers later left another resident soiled and

8

was promptly terminated for the violation. Glover therefore suffered similar punishment—termination—for similar conduct—leaving a patient soiled. As such, even if Devers was similarly situated, Glover cannot demonstrate that he was treated differently than she was.

For these reasons, the Court finds that Glover is able to demonstrate retaliation pursuant to the direct method but unable to demonstrate retaliation pursuant to the indirect method. Accordingly, the Court reverses its prior grant of summary judgment to Kenwood on Count II.

**II.     Count III**

Kenwood moves the Court to reconsider its finding that Glover presented sufficient facts to survive summary judgment on her age-based termination claim under the indirect method. Kenwood challenges the Court's previous finding that disputed facts existed as to what actually transpired on September 1, 2005 and who replaced Glover after her termination.[4]

**A.     September 1, 2005**

Kenwood's challenges to the facts surrounding September 1, 2005 are misplaced. The Court noted that both Glover and Boldon had conflicting versions of events. Glover's facts alleged that Boldon mentioned to her, while she was on her lunch break, that Ivy claimed to have soiled herself. Glover reasonably assumed that she could rely on the CNA's covering for her during her lunch break to take care of Ivy if she had in fact soiled herself.[5] Glover also stated that she continued to ride the elevator to the cafeteria with Boldon without Boldon commenting again on the need to quickly

---

[4] Kenwood also moves the Court to reconsider its finding that Glover sufficiently demonstrated that its reasons for terminating her were a pretext for discrimination. Because the Court now finds that Glover fails to demonstrate a *prima facie* case of age-based termination, the Court need not address the issue of pretext. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008) (summary judgment is appropriate if a plaintiff fails to establish any of the *prima facie* elements of discrimination).

[5] Glover notes that Ivy routinely claimed to have soiled herself when in fact she had not.

9

attend to Ivy. Boldon's facts, meanwhile, alleged that she learned that Ivy soiled herself and instructed Glover to clean her. That Boldon's version was corroborated by other Kenwood employees does not negate the fact that a factual dispute exists as to when Ivy soiled herself and whether Boldon instructed Glover to clean her before taking her lunch break. Moreover, Ivy herself gave conflicting accounts of the events, at times claiming that she was left soiled and at other times claiming that Glover immediately attended to her. Therefore, the Court reaffirms its holding that a factual dispute exists surrounding Glover's interaction with Boldon and Glover's treatment of Ivy on September 1, 2005.

### B. Glover's Replacement

Kenwood argues that the Court mistakenly found the issue of Glover's replacement to be in dispute because it failed to rely on Kenwood's Chief Information Officer Brigite Grossman's ("Grossman") affidavit contained in Kenwood's Supplemental Answer to Interrogatory No. 6. (Doc. 145, Ex. 1 at 8-9.) The Court agrees and, for the following reasons, grants summary judgment to Kenwood on Count III.

In its previous Order, the Court found that Glover could not survive summary judgment on Count III under the direct method, but that she had satisfied the burden-shifting criteria of the indirect method. The indirect method requires Glover to put forth evidence that: (1) she belongs to a protected class; (2) she performed her job according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). It is undisputed that Glover satisfied the first and third elements regarding her termination and the Court found that she satisfied her burden on the third and

fourth elements. The Court now reconsiders its finding on the fourth element.

The Court, in its earlier Order, relied largely on Kenwood's responses to the Illinois Department of Human Rights ("IDHR") questionnaire, which stated that both Teresa Bagby ("Bagby") and Sheila Johnson ("Johnson") replaced Glover and indicated that they "shared" Glover's CNA and rehabilitation duties. Bagby was 66 years old when she replaced Glover and Johnson was 37.[6] The Court was also persuaded by the deposition testimony of Alice Campbell ("Campbell"), a rehabilitation aide at Kenwood who resigned soon after Glover was terminated. Campbell stated that Bagby did not have the same certifications that Glover did and, as such, could not assume all of Glover's previous duties. In light of these facts, the Court held that Glover had satisfied her burden of demonstrating that she was replaced at least in part by Johnson, a substantially younger employee. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (if an employee is replaced by someone not substantially younger, no inference of age discrimination is generally appropriate).

Grossman's affidavit, however, states that she erroneously filled out the IDHR questionnaire. (Doc. 145, Ex. 1 at 8-9.) Specifically, Grossman claims that she listed both Bagby and Johnson as Glover's replacements because she thought she was required to identify all replacement employees who were hired at or about the same time as Glover's replacement. Grossman clarifies that Glover's replacement was Bagby, not Johnson; Johnson was hired on October 5, 2005 to replace Campbell, who voluntarily resigned from Kenwood on September 30, 2005. In light of Grossman's affidavit, the Court reconsiders its earlier finding that Johnson was hired to replace Glover.

---

[6] Kenwood initially stated that Johnson was 32 years old at the time of her hire, but corrected this in Grossman's supplemental affidavit.

Glover does not present any evidence beyond the IDHR questionnaire and Campbell's deposition testimony to support the allegation that she was replaced by a substantially younger employee. As discussed, Kenwood's responses to the IDHR questionnaire have been explained and Campbell's testimony simply stated that Bagby was not certified in all of the areas that Glover was; Campbell did not state that Glover's remaining duties were taken over by a substantially younger employee. Under the burden-shifting indirect method, Glover may have demonstrated that Bagby did not have the same qualifications that she did, but Glover has failed to demonstrate that she was replaced by a substantially younger employee.

Because Glover is unable to demonstrate the fourth element of her *prima facie* case, the Court need not address whether Glover sufficiently demonstrated that Kenwood's reasons for her termination were a pretext for discrimination. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). Therefore, the Court reconsiders its earlier denial of summary judgment to Kenwood on Count III due to the Court's failure to consider Grossman's affidavit in its previous Order. In light of the facts asserted by Grossman, the Court finds that Glover has failed to demonstrate that she was replaced by a substantially younger employee, a necessary element of a claim of age-based termination pursuant to the indirect method. For the reasons stated in the Court's Order, Glover is also unable to demonstrate age-based termination pursuant to the direct method. Accordingly, the Court grants summary judgment to Kenwood on Count III.

**CONCLUSION AND ORDER**

The Court grants in part both motions: the Court finds that Glover has sufficiently demonstrated retaliation under the direct method based on her termination and therefore denies summary judgment to Kenwood on Count II; the Court also finds that Glover has failed to sufficiently demonstrate that she was terminated because of her age and therefore grants Kenwood summary judgment on Count III. Accordingly, Glover may proceed to trial on Count II.


So ordered.

                                                                                     _____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 13, 2011